5110528. Counsel, please. Thank you, Your Honor. And excuse the Court, Mr. Selby, Jim Keefe here, third time this time on behalf of Olin. I think the question is pretty easy here. Was the Commission decision when they found 419-05 rather than 648 as the date of the case, the manifestation date of the evidence? The Commission is right. They win. I think if the Commission was wrong, which we believe they are, and it's June 4, 2008, then my client prevails because I don't think the petitioner gave timely notice of the carpal tunnel condition and therefore the claim should be denied. Manifestation date plainly apparent to a reasonable person between the injury and its relationship to work. Obviously, both of us have cited case laws, but what are the factors in determining a manifestation date? I think just looking at it almost literally, 419-05 is not supported by the accident because she didn't even have a condition at that time, at least according to the medical evidence. She was diagnosed formally by nerve conduction studies in February of 2006, but again, that was for work up her cervical condition. Nobody said, hey, go get treatment for your carpal tunnel. She wasn't asking for treatment for the carpal tunnel. Was she reporting numbness in her hands all along? I believe, Your Honor, that the numbness in the left hand was from the very start. I think the first documented bilateral hand numbness was when she saw the neurologist at the recommendation of our examiner, Dr. Coyle, in February of 2006. And the employer had the opportunity to follow her treatment and condition all along. She did. She reported to Olin's medical department so long as the period she was working. Obviously, when she was off work, I don't think she was reporting, but yeah, those records do set forth. We knew in 2006 that she had carpal tunnel by nerve conduction study, but I don't think the diagnosis first in February of 2006 can get you to an accident date, a manifestation date back on 419-05. Moreover, I don't even know if they could do it in February 2006, because despite the diagnosis, it wasn't filed or alleged as work-related. The other factors that we look at is, when did she really get treatment for this? Well, again, the nerve study was, they picked that up incidentally, the nerve study was for the cervical condition, of course. I think the first time that we actually had treatment was on 5-2308 when she saw her primary doctor, Atan, A-T-O-N. And again, that's despite the fact that she had seen four board-certified spine surgeons, and all of them, there were no complaints of right-sided symptoms up until the date of 2008. Didn't this kind of boil down to some extent, though, to a situation where she has a neck problem, and she's having radicular symptoms, and it takes a while to thresh out what's what? Well, that's precisely right. The initial report to Dr. Rue, who she saw shortly after the April 2005, he's a spine surgeon, and according to his note, it was neck and radiating symptoms down the left side. So we think cervical radicopathy. The doctors think cervical radicopathy. So we get an exam with Dr. Coyle in February 2006. He says, yeah, I think it's cervical radicopathy. This is all accepted. Let's do an EMG. They do the EMG nerve conduction study, and it does happen to pick up carpal tunnel. Coyle looks at that, doesn't say anything about carpal tunnel. At that point, she then saw two other surgeons, Dr. Gornat and Dr. Sprick, who again, for her neck, no complaints at all, no mention of carpal tunnel in the records. At that point, I believe the symptoms were limited to the left-hand side. You've conceded causation on carpal tunnel? Absolutely. You agree that the nature of her work might have caused her carpal tunnel. So the only way you win is on lack of notice? Yes, sir. And your complaint is you got notice too soon? Well, not really too soon in that we didn't get notice of a work-related injury. We got notice of a condition, absolutely. But notice of a work-related injury, which I think that recent case recited, you know, you got alleged as work-related. And in fact, they did allege it as work-related using a date of accident of June 4, 2008 in the second application and filed that a year later. So, and I'm not going to get up here and say, you know, we were prejudiced and, you know, our examiner subsequently agreed it was work-related. But again, it wasn't reported as work-related. And based upon that recent case, Bill, it's in the file, I don't think she gave notice within the statutory that required 45 days. And I just don't know how they got date of accident of 4-19-05 when all the evidence supports that she was not receiving treatment, wanted treatment, made complaints, seeking treatment until after 2008. Because it was on the second nerve study on 6-4-8, which they alleged as the initial claim for carpal tunnel that she had the second nerve study. At that point then, she saw one surgeon who said, yeah, I'd probably do surgery now, but conservative measures of splinting had failed. And she goes and sees Michael Beatty at the end of a wait and says, yeah, I think you probably need surgery now. And even when she saw Beatty in December 8, she related her symptoms starting back in May of 2000. I mean, I think certainly she had bilateral numbness and numbness prior to 2008 because it's in a couple of the records. But I think symptoms were more on again, off again, certainly not requiring any treatment. And certainly that's one factor that the commission should have considered in reaching the date of action. So you felt you got notice too soon. Now, something did happen on April 19, 2005. She developed pain, symptoms going down to her hands, and she related these to the employer's medical department on that date. Well, I believe maybe she testified she related that too. But I mean, I think the record was pretty clear. It said, you know, neck pain and down my left arm and the left hand. I don't think that there's any suggestion that there were right upper extremity complaints. And I think that's significant because when she saw Dr. Brewer the same time, or around the same time, I should say, again, he specifically documented in his notes, no problems on the right, this is all on the left. So is it hypothetically possible that she had carpal tunnel in April 2000? Well, she said hands though, didn't she? She testified. Didn't she report this on her hands? Oh, I'm sorry. Is that what you're asking? Yeah. Yes, she did testify to that. But then she later testified at the time of hearing that she admitted she told Dr. Beatty that the right hand symptoms didn't start until April or May of 2008. So I don't know just the fact that she let off the hearing by saying, oh, I told him it was both hands. But again, just because you have complaints in the hands doesn't mean you have carpal tunnel symptoms. But if we were to find that that was the manifestation date, then the notice issue would be the same date of the manifestation, which obviously would be timely, right? Oh, we agree. If you find the commission was right on the manifestation date, there's no doubt about it. I just don't think there's any evidence in the record to support the manifestation date of 4-19-05, primarily because those factors that I listed and that are listed in our brief. So, any further questions? Thank you. May it please the Court, Steve Selby for Patricia Williams. I have a very short brief. And it's your argument? Yes, sir. They're complaining it's too soon. And Mr. Keefe didn't get to try the case, Mr. Keltner did. So we were equivalent with the messenger, huh? That's right. She did go to dispensary, it is in the records. It is actually reflected in page A-14 of the Industrial Commission's review stating that she went that day. She came in saying her neck and arm were bothering me. She testified at hearing that she, while doing this NATO job, packing this ammo for NATO, 7.62 millimeter rounds, that she'd have problems going all the way into her hands intermittently. Those things are all in the record. So, I think the telling tale is that when she went off, I believe it was 4-20, and she was off through August 14th, 06, the first time before they brought her back on a cripple crew flight duty trying to do something job. During that period of time in February of 06, is when they send her for an independent medical exam to Dr. Coyle, who immediately orders an EMG and comes back and says she's got moderate bilateral carpal tunnel syndrome. It doesn't just stay there in that IME report. It makes it to the Olin dispensary records, and they, in all fairness, again, they were following her. That's also in the record, the dispensary records. And they made it 105.3? Yes, sir. It's pretty good. But basically, they knew it. They knew it before she did. So, the whole thing about the 08, that that's the manifestation date. That was the second EMG. After she's had her neck surgery, and everybody and their brothers wait to see, is it having to do with radicular symptoms? Where's the short in the wiring? Let's get the big short fixed, and let's find out if she's got a short further down the line. They figured out, yeah, it's still a problem. So, everybody, Dr. Beattie, Dr. Olinger, and other IME says in 6 of 09, it's related. I just don't, there's no cases I've ever been able to find saying that notice or statute of limitations apply when it's too soon. There's no such thing. And that's what we're dealing with here. There's no way. And the tell-tale, and Mr. Keefe, to his credit, says they weren't prejudiced. And under Gano, the case that I cited, if there's no prejudice, notice isn't even possibly an issue. Thank you. Yes, I would only say very briefly, Your Honors. Yeah, we knew the condition is documented in the records, but it wasn't documented as work-related. And I don't believe she ever testified. I told them I knew I had carpal tunnel, and it was work-related prior to 2008. Thank you, Counsel. The Court will take the matter under advisory for disposition. We'll say recess until 9 o'clock in the morning.